UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WASTE MANAGEMENT OF ST. LOUIS-, WEST HAULING DIVISION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Cause No. 4:04CV00361JCH |
| UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS, OF AMERICA, LOCAL UNION NO. 282 ) ) ) ) | |
| Defendant. | |

This matter is before the Court on Plaintiff's Complaint (Doc. 1) filed with the Court on March 24, 2004 seeking an order to set aside and vacate an arbitration award and Defendant's Answer to Complaint and Counterclaim seeking an order to enforce a labor arbitration decision and award (Doc. 7) filed with the Court on April 20, 2004. The matters are fully briefed and ready for decision.

## **BACKGROUND**

Edwin McNees ("McNees") was a union employee who worked for Plaintiff in Foristell, Missouri until he was terminated on December 30, 2002. (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), (Doc. 13.1)). Plaintiff and Defendant are parties to an Agreement between Waste Management of St. Louis-West Hauling Division and United Automobile, Aerospace, and Agricultural Implement Workers of America, Local Union

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

No. 282, dated as of February 16, 2002 (the "CBA") (Doc. 8).

Section 4.1 of the CBA states that Plaintiff has the right to "disciple, suspend, or discharge employees for just cause." (CBA, p. 6). Section 11.1 of the CBA states that the "right of dismissal and maintenance of discipline among employees shall be the exclusive right and responsibility" of Plaintiff, but goes on to say that Plaintiff "shall not discharge an employee without just cause." (CBA, p.29).

Plaintiff implemented a set of General Work Rules pursuant to Section 4.2 of the CBA, effective August 12, 2002. (Plaintiff's Statement of Uncontroverted Facts ("Plaintiff's Facts"), (Doc. 16)). Work Rule 8 specifies that "the use of threatening or abusive language or actions, any harassment, discourteous, indecent or immoral conduct directed toward any employee..." is "contrary to the best interests" of Plaintiff. (Complaint, Ex. A (the "Work Rules")). A violation of the Work Rules "may" "depending on the severity of the offense" subject the violator to "any level of disciplinary action, up to and including immediate discharge." (Id.). Section 4.2 of the CBA states that Plaintiff has "the right to establish rules and procedures that are not inconsistent with the provisions of" the CBA. (CBA, p. 7). It further provides that Defendant "shall be allowed to protest the application of these rules through the grievance procedures." (Id.).

Section 7 of the CBA details the grievance procedure and states that the "arbitrator's decision shall be final and binding on both parties." (CBA, Section 7.4, p. 13). Section 7.6 specifies that the "arbitrator shall not be empowered to add to, subtract from, or change any of the terms of [the CBA]...". (CBA, p. 14). It further states:

> The arbitrator shall have jurisdiction only to interpret, apply, and determine compliance with the provisions of [the CBA] and to modify the degree of discipline imposed by [Plaintiff], insofar as the arbitrator may deem necessary for the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> determination of the grievance appealed to them....The arbitrator shall have no
> power to substitute their discretion in cases where [Plaintiff] is given sole discretion
> to act by [the CBA]...

(CBA, p. 14).

On January 1, 2003, Defendant filed a grievance protesting McNees' termination, as provided for in Article 7 of the CBA. (Defendant's Facts, ¶10). Following Plaintiff's denial of the grievance, Defendant submitted the grievance to arbitration in accordance with Section 7.4 of the CBA. (Defendant's Facts, ¶11).

A hearing was held on November 6, 2003 in front of Thomas A. Cipolla, who was chosen by the parties to serve as arbitrator. (Defendant's Facts, ¶¶ 12-13). On February 29, 2004, Cipolla issued his decision and award, in which he found that on December 28, 2002, McNees called his immediate supervisor, Mintrel Hoffman, a "mother-fucking liar...just like that baldheaded boss of yours down the hall." (Complaint, Ex. B ("Decision"), p. 14). Cipolla also found that McNees had been given a verbal warning for an incident that occurred on November 29, 2002. (Decision, p. 15). Cipolla further noted that following the comment on December 28, while Plaintiff's District Manager Todd Jansen told McNees that "these types of 'things'" could not be tolerated, he continued to have a discussion with McNees about other work issues and both Jansen and Hoffman allowed McNees to continue working. (Decision, pp. 11, 16).

Cipolla found that McNees had violated Work Rule 8 with his comments on December 28, 2002, but that Plaintiff's actions in allowing McNees to continue to work supported his conclusion that McNees' violation did not call for discharge. (Decision, p. 17-18). Cipolla determined that Plaintiff did not have just cause to discharge McNees as required by Sections 4.1 and 11.1 of the CBA. (Decision, p. 19; Defendant's Facts, ¶14). Cipolla concluded that while

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

termination was not called for, lesser disciplinary action was justified and modified McNees' discharge to a 30-day suspension. (Decision, p. 19; Defendant's Facts, ¶15). He also ordered that McNees be reinstated to employment with full back pay for the period following the 30-day suspension until reinstatement and that "the 30-day suspension may be considered as a basis for progressive discipline for the next 11 months after the Grievant's reinstatement (in line with Article 11's language that any disciplinary notice shall not be considered as a basis for progressive discipline after 12 months of its issuance)." (Decision, p. 19, Defendant's Facts, ¶16).

Plaintiff brought suit pursuant to Section 301 of the Labor-Management Relations Act of 1957, 29 U.S.C. § 185(a), 29 U.S.C. § 185(c) and 28 U.S.C. § 1331. Plaintiff requests that the Court vacate the Decision, arguing that it did not draw its essence from the parties' agreement because (1) the arbitrator's underlying findings mandate a finding in favor of Plaintiff, and (2) the arbitrator imposed conditions on McNees' termination which were not contemplated in the CBA or Work Rules. (Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo in Supp."), Doc. 15). Defendant argues conversely that the Decision should be confirmed, and requests attorney's fees and costs. (Memorandum of Defendant in Support of its Motion for Summary Judgment ("Defendant's Memo in Supp."), Doc. 13.2).

## DISCUSSION

I.  Standard of Review.

Arbitration awards are rarely overturned as "the scope of judicial review of arbitration awards under collective bargaining agreements is extremely limited." United Food and Commercial Workers v. Shop N' Save Warehouse Foods, Inc., 113 F.3d 893, 894 (8th Cir.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1997).  The only restriction placed on the permanence of an arbitrator's decision is that the arbitrator is "confined to interpretation and application of the collective bargaining agreement…he may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."  United Steelworker's of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960).  An arbitrator's decision will not be overturned unless "the arbitrator's words manifest an infidelity to this obligation."  Id.

The Supreme Court clarified this standard in 1987, stating that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision."  United Paperworkers Int'l Union, AFL-CIO v. Misco Inc., 484 U.S. 29, 38 (1987). The Court will not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."  Id. at 36.  The court in United Steelworkers of America emphasized that "it is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."  United Steelworkers of America at 599.

II.     The arbitrator's underlying findings.

Plaintiff's first argument in favor of vacating the arbitration award is that, by determining that McNees violated Work Rule No. 8, Cipolla was compelled by the CBA to accept Plaintiff's decision to terminate McNees.  Plaintiff argues that Cipolla failed to "draw the essence [of his decision] from the collective bargaining agreement" by determining that while McNees had violated the Work Rules, Plaintiff did not have just cause under the CBA to terminate McNees.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Court finds that, contrary to Plaintiff's assertion, Cipolla's decision is consistent with the terms of the CBA. Plaintiff argues that, because the Work Rules provided that Plaintiff may elect to terminate an employee for a violation of Work Rule 8, Cipolla had no basis to find that they were not justified in terminating McNees. The cases on which Plaintiff relies in support of its position, however, are distinguishable from this case because the collective bargaining agreements in those cases mandated termination for certain offences. For instance, in Contico Int'l, Inc. v. Local 160, Leather Goods, Plastics and Novelty Workers, AFL-CIO, 738 F. Supp. 1262, (E.D.Mo. 1990), an employer challenged an arbitrator's determination that discharge was an excessive penalty when an employee had been found sleeping on the job. The work rules in that case stated: "Any violation of the following work rules *will* lead to automatic termination of employment: 18. Sleeping on the job during scheduled work hours." Id. at 1264 (emphasis added). The court in Contico determined that the arbitrator had exceed his authority by determining that, although the employee had been sleeping on the job, termination was not appropriate. Id. Similarly, in Warrior & Gulf Navigation Co. v United Steelworkers of America, AFL-CIO-CLC, 996 F.2d 279 (11th Cir. 1993) and Excel Corp. v. United Food and Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1470 (8th Cir. 1996), the applicable collective bargaining agreements mandated termination upon the occurrence of certain offenses, failing a drug test a second time, and absence from employment for more than a year, respectively.

In this case, unlike the cases relied upon by Plaintiff, the CBA and Work Rules did not specify that termination was automatic upon the determination that a particular rule had been broken. Rather, the Work Rules only permit, not require, Plaintiff to fire an employee for a violation of Work Rule 8, and that permission is further conditioned on the severity of the

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

offense.[1]  (Work Rules, opening ¶¶1-2).  The Eighth Circuit directs that a rule which "provides that an employee "may" be discharged, suggesting a case-by-case analysis... supports [an] arbitrator's decision to review the choice of a disciplinary measure." Trailmobile Trailer, LLC v. International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO, 223 F.3d 744, 748 (8th Cir. 2000).

Furthermore, the Work Rules must read in conjunction with Plaintiff's obligation to only terminate an employee for just cause under Section 11.1 of the CBA.  Section 4.2 of the CBA states that "[t]he company has the right to establish rules and procedures *that are not inconsistent with the provisions of this agreement…*"  (CBA, p. 7) (emphasis added). "[T]he law demands that collective bargaining agreements be construed as a whole with the terms read in context of the entire agreement."  Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, 284 F.3d 821, 825 (8th Cir. 2002).  In the event of an ambiguity, "the law imposes the obligation on the arbitrator of harmonizing possibly discordant provisions of a CBA."  Id.

The Court finds that Cipolla's determination that McNees violated Work Rule 8, but that Plaintiff did not have "just cause" to terminate him is consistent with a rational interpretation of the terms of the CBA.  Accordingly, the Court concludes that Cipolla did not violate the plain language of the CBA when he determined that McNees had violated Work Rule 8 and yet should not have been discharged.  Consequently, Plaintiff's motion to vacate the Decision on these

---

[1] The Work Rules state that if an employee violates the Work Rule, he or she "*may* be subject to disciplinary action, up to an including termination."  (Work Rules, opening ¶1) (emphasis added).  The Work Rules further specify that "*[d]epending on the severity of the offense*, or frequency or unrelated offenses, [Plaintiff] *may* elect to implement any level of disciplinary action, up to and including immediate discharge..."  (Work Rules, opening ¶2) (emphasis added).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

grounds must be denied.

III.  Conditions on McNees' termination outside the CBA or Work Rules.

Plaintiff next argues that the arbitrator manifested clear disregard for the plain language of the parties' agreement and instead "imposed his own brand of industrial injustice." (Plaintiff's Memo in Supp., p.10). Plaintiff argues that there is no justification for Cipolla considering that Plaintiff did not immediately terminate McNees as a basis for finding that termination was not justified at all in the situation.

The Court finds Plaintiff's argument to be unpersuasive. As discussed above, the Work Rules are limited by Plaintiff's obligation to only fire an employee for just cause. The CBA expressly empowers the arbitrator "to modify the degree of discipline imposed by [Plaintiff], insofar as the arbitrator may deem necessary for the determination of the grievance appealed..." (CBA, Section 7.6, p. 14). Cipolla did not find that because Plaintiff did not immediately fire McNees they were not entitled to fire him at any point, as Plaintiff argues. Rather, Cipolla cited this fact in support of his conclusion that McNees's behavior was not severe enough to amount to "just cause" for termination. (Decision, pp. 16). The Court finds this to be a rational application of the facts consistent with the terms of the CBA and Work Rules.

The Court will confirm the arbitrator's award "even if we are convinced that the arbitrator committed serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.' " Schoch v. InfoUSA, Inc., 341 F.3d 785, 788 (8th Cir. 2003) (citing Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers, 309 F.3d 1075, 1080 (8th Cir.2002). Here the Court finds that Cipolla rationally interpreted the

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Work Rules and the CBA in modifying McNees's discipline pursuant Section 7.6 of the CBA, when he determined that while McNees had violated Work Rule 8, it was not sufficiently severe to merit termination. Plaintiff's motion to vacate the Decision on these grounds must be denied.

IV.     Defendant's Motion for Summary Judgment.

Defendant requests that the Court confirm the Decision and order Plaintiff to pay reasonable attorneys' fees and costs.

A district court must confirm an arbitration award if it "draws its essence from the collective bargaining agreement" at issue. United Steelworkers v. Enter., Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Titan Wheel Corp. v. Local 2048, Int'l Ass'n of Machinists, 253 F.3d 1118, 1119 (8th Cir. 2001). As discussed above, the Court finds that Cipolla did not exceed the scope of his authority under the CBA and that his decision "draws its essence" from the CBA. Therefore, the Court will grant Defendant's motion to confirm the Decision.

Defendant also requests that we award it attorneys' fees and costs. The Eighth Circuit has held that attorneys' fees may be awarded in an action brought under section 301 of the Labor-Management Relations Act of 1947, but only where the losing party clearly acted in bad faith. International Brotherhood of Electrical Workers, Local No. 265 v. O.K. Electric Co., 793 F.2d 214, 216-17 (8th Cir.1986) (per curiam). Courts have indicated that bad faith may exist where a party's claim is deemed to be totally without merit. Actors' Equity Ass'n v. American Dinner Theatre Institute, 802 F.2d 1038, 1042 (8th Cir. 1986). The Court finds that Defendant has not shown the requisite bad faith on the part of the Plaintiff and therefore its motion for attorneys' fees

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

and costs will be denied.

## CONCLUSION

The Court finds that Plaintiff is not entitled to vacation of the Decision on any grounds. Therefore, its Complaint and Motion for Summary Judgment must be denied and Defendant's Counterclaim and Motion for Summary Judgment to enforce the Decision must be granted   The Court additionally finds that Defendant has not shown that Plaintiff has acted in bad faith in pursuing its Complaint and therefore, Defendant's motion for attorneys' fees and costs will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 14) is hereby DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 13) is hereby GRANTED in part and DENIED in part, and Plaintiff's Complaint is hereby DISMISSED with prejudice and the Decision is CONFIRMED in its entirety.

Dated this 28th Day of July, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com